# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RONALD LEMA KUPSKY,**

    Plaintiff,

  v.                                            Case No. 19-CV-265

**LAURA BONIS,
CHARLES YORK, and
TONIA MOON,**

    Defendants.

---

# ORDER

Plaintiff Ronald Lema Kupsky initiated a lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights by denying him access to a book that his family ordered for him. The court screened his complaint and allowed him to proceed against defendants Laura Bonis, Charles York, and Tonia Moon on a claim for violating his First Amendment rights and a claim for violating the equal protection clause of the Fourteenth Amendment. The defendants have now moved for summary judgment.

**1. Relevant Facts**

*1.1 The Parties*

Kupsky is incarcerated at Waupun Correctional Institution. (ECF No. 39, ¶ 1.) Defendant Bonis worked as a social worker at Waupun between March 1992 and March 2014 and then as the Social Services Director from March 2014 to July 2019.

(*Id.*, ¶ 2.) Her duties included, but were not limited to: assessing and evaluating new inmates' treatment and security needs; monitoring and evaluating inmates' progress and documenting progress in their Social Services files as appropriate; providing inmates with information about institution services and programs; and coordinating inmate transfer and release. Bonis also provided oversight for the Social Services Department and ensured compliance with administrative rules, the Department of Corrections (DOC), and institution policies and procedures. She was also involved in planning, coordinating, and administering direct programming for the treatment of inmates and the Records program. (*Id.*)

Defendant York has worked as a Property Sergeant at Waupun since March 2018. (ECF No. 39, ¶ 3.) His duties include supervising the correctional officers in the Mail and Property Department. (*Id.*, ¶ 4.) The Mail and Property Department is responsible for the daily monitoring, delivery, and disposal of inmates' mail and property in accordance with Chapter DOC 309 of the Wisconsin Administrative Code and institution policy and procedure. (*Id.*) Defendant Moon has worked as an Institution Complaint Examiner at Waupun since November 2012. (*Id.*, ¶ 5.) She has the duties set forth in Chapter DOC 310. (*Id.*, ¶ 6.)

*1.2 Publication Review*

Inmates at Waupun are permitted to purchase publications from outside vendors. (ECF No. 39, ¶ 7.) These purchases must meet the property and content requirements of the Wisconsin Administrative Code, Division of Adult Institutions (DAI) policy, and facility policies. (*Id.*, ¶ 8.) Per DAI Policy #309.20.03(I)(C)(13),

2

inmates may possess up to 25 publications at one time, including books, magazines, newspapers, maps, newsletters, etc. (*Id.*, ¶ 9.) Inmates are prohibited from having pornography, as defined by the Wisconsin Administrative Code and DAI policy. (*Id.*, ¶ 10.) Inmates are also prohibited from having publications that are inconsistent with or that pose a threat to the inmates' safety, treatment, or rehabilitative goals under DAI Policy #309.04.01(V)(F)(7) and Wis. Admin. Code § DOC 309.04(4)(c)(8)(c). (*Id.*, ¶ 11.)

When packages arrive at Waupun staff in the Property Department are the first to open and review the contents. (ECF No. 39, ¶ 12.) If a publication clearly violates a policy, such as containing nudity, pornography, or encouraging violence or gang affiliation, it is denied by the Property Department and the inmate receives a notification that he will not be receiving the publication. (*Id.*) Some publications require additional scrutiny depending on the intended recipient. (*Id.*, ¶ 13.) For instance, officers are not necessarily able to determine when publications without pornography may nevertheless be inconsistent with an inmate's treatment or rehabilitative goals. (*Id.*) An inmate's status as a sex offender may impact the type of publications that are approved for him, and staff in the Property Department are not always aware of the inmates' convictions or rehabilitative needs. (*Id.*, ¶ 14.)

During Bonis's time at Waupun publications that might be prohibited as inconsistent with an inmate's treatment or rehabilitative goals were periodically provided to her with a request for further review to make that determination. (ECF No. 39, ¶¶ 15–16.) Each time she received a publication for review she approved or

3

denied it based on the appropriateness of the images and content for the particular inmate and tried to be consistent in her publication denials. (*Id.*, ¶ 18.) Bonis relied on her education, experience, training, and professional discretion and made decisions within the guidelines of Wis. Admin. Code §§ DOC 309.04 and 309.05 and related DAI policies. (*Id.*, ¶ 19.)

Bonis reviewed the materials in the Property Department. (ECF No. 39, ¶ 20.) When she was finished with her review, she informed the Department which publications she approved and which she denied. (*Id.*) Once she reviewed a publication, she was no longer involved in what happened to it. (*Id.*, ¶ 21.) If an inmate disagreed with her denial of a publication, he was permitted to file an inmate complaint through the Inmate Complaint Review System (ICRS). (*Id.*, ¶ 22.) The Institution Complaint Examiner (ICE) would then investigate the complaint, and the ICE's determination would be reviewed by the appropriate reviewing authority. (*Id.*, ¶ 23.)

*1.3 Sex Offender Treatment*

Kupsky has a criminal history involving sex offenses against minors. (ECF No. 39, ¶ 24.) On July 15, 2014, he was convicted of Fourth-Degree Sexual Assault in Outagamie Case No. 13-CF-0810. (ECF No. 29, ¶ 25.) On October 9, 2017, in Door County Case No. 14-CF-17,[1] he was convicted of First-Degree Assault – Sexual

---

[1] In the defendants' proposed findings of fact, they state that Kupsky was also convicted of Cause Child under Age of 13 to View/Listen to Sexual Act. (ECF No. 39, ¶ 26.) However, Kupsky states in his responses to the proposed facts that he was found not guilty of that charge. (ECF No. 44, ¶ 26.) According to the Wisconsin Circuit

4

Contact with Person under Age of 13; Bail Jumping; Child Exploitation – Videos, Records, etc.; and Possession of Child Pornography (*Id.*, ¶ 26; ECF No. 44, ¶ 26.) On December 12, 2018, Kupsky was convicted of Prisoner Throw/Expel Bodily Substances in Dodge County Case No. 17-CF-427. (ECF No. 39, ¶ 27.) Finally, on May 24, 2019, he was convicted of First-Degree Child Sexual Assault – Sexual Contact with Person Under Age of 13 in Outagamie County Case No. 18-CF-686. (*Id.*, ¶ 28.)

When an inmate begins his prison sentence he typically participates in an intake process. (ECF No. 39, ¶ 29.) Inmates convicted of a sex offense are normally evaluated by a psychologist and assigned a sex offender treatment need. (*Id.*, ¶ 30.) A sex offender assessment was completed for Kuspky on September 1, 2016, while he was an inmate at Dodge Correctional Institution. (ECF No. 39, ¶ 31.) He refused to participate in the in-person portion of the assessment, so the assessment was based only on records. (*Id.*, ¶ 32.) The September 14, 2016 Sex Offender Assessment Report described a sexual assault committed by a 26-year-old Kupsky against his 12-year-old girlfriend. (*Id.*, ¶ 33; *see also* ECF No. 40-5 at 1.) The Report also noted Kupsky's opinion that the victim was lying and that he was not going to participate in any treatment. (ECF No. 39, ¶ 34.) Based on a review of the records, Institution Psychological Services recommended that Kupsky participate in SOT-2 treatment— treatment for moderate risk sex offenders. Kupsky has not yet received any sex offender treatment. (*Id.*) He was transferred to Waupun on October 3, 2016, and,

---

Court Access Program, Kupsky is correct. He was found not guilty of that offense. *See* https://wcca.wicourts.gov/.

besides some time at the Wisconsin Resource Center, has been at Waupun since. (*Id.*, ¶ 35.)

*1.4 Denied Books*

In July 2018 the Waupun Property Department sent Bonis a book to review—*Astra Lost in Space*—so she could determine if it was appropriate for Kupsky to receive. (ECF No. 39, ¶ 36.) She reviewed Kupsky's file information, including the Bureau of Classification and Movement/Classification Summary in the Corrections' database, which contains current offense details, criminal history details, and treatment programming information. (*Id.*, ¶ 37.) After reviewing Kupsky's record, Bonis determined he should not have the book. (*Id.*) Bonis issued Kupsky a memorandum on July 3, 2018, explaining:

> Due to the fact that you are an untreated, repeat sex offender with multiple underage victims, I am restricting you from possession of any materials which may contain nudity, depiction of young girls in scantily clad clothing, having subject matter that involves sexual violence or otherwise causing harm to a child.

(*Id.*, ¶ 38.)

On December 28, 2018, the Property Department received a book addressed to Kupsky titled, *So I'm a Spider, So What, Volume 4*. (ECF No. 39, ¶ 39.) Because it contained questionable content, the book was provided to Bonis for closer review and evaluation as to whether Kupsky could have it. (*Id.*, ¶ 40.) Bonis did not know the girl in the image's exact age (*see* ECF No. 45-1 at 9, ¶ 16), but the images in the book contained pictures of young girls in scantily clad clothing (ECF No. 39, ¶ 39). Bonis denied the book based on her prior review of Kupsky's records because the book

6

contained many sexualized depictions of young girls. (*Id.*, ¶ 41.) She also consulted with Dr. Van Buren, a licensed psychologist. (*Id.*, ¶ 42.) Dr. Van Buren explained that Kupsky should not have any publications containing "sexualized depictions of children," which means children depicted with enlarged breasts, revealing clothing that would normally be worn by adults, and/or posed in sexually suggestive positions. (*Id.*, ¶ 43.)

Bonis found that viewing the book *So I'm a Spider, So What, Volume 4* would reinforce Kupsky's preoccupation that contributed to his incarceration in the first place rather than engaging in pro-social activities. (ECF No. 39, ¶ 44.) Kupsky was issued a Notice of Non-Delivery of Mail/Publication on December 29, 2018, explaining that the book was denied. (*Id.*, ¶ 46.) He signed the notice, indicating that the book should be held pending review via the ICRS. (*Id.*)

*1.5 Inmate Complaint Review System*

The ICRS is a process by which inmates may file grievances related to significant issues regarding rules, living conditions, and staff actions affecting institution environment. (ECF No. 39, ¶ 47.) The Institution Complaint Examiner's office acknowledged receipt of Kupsky's complaint (number WCI-2019-110) regarding the denial of the book *So I'm a Spider, So What, Volume 4*. (*Id.*, ¶ 48.) True and accurate photocopies were taken of excerpts from the book. (*Id.*) Defendant Moon investigated the complaint and concluded that Bonis had reviewed the book and found it to be contraindicative to Kupsky's rehabilitative goals. (*Id.*, ¶ 49.) Moon found that the denial of the book was based on Wis. Admin. Code §§ DOC 309.05(1)(2)(b)(4)

7

and 309.04(4)(c)8. (*Id.*, ¶ 50.) She also determined that Bonis had the education and experience necessary to make this determination and declined to second-guess Bonis's decision. (*Id.*, ¶ 51.) As such, Moon recommended that the complaint be dismissed. (*Id.*) Warden Foster (not a defendant) accepted Moon's recommendation and dismissed the complaint on January 14, 2019. (*Id.*, ¶ 52.)

Kupsky appealed the warden's decision to the Department of Correction's Office of the Secretary. (ECF No. 39, ¶ 53.) The Office of the Secretary dismissed Kupsky's appeal, finding that it was "in the best interest of the inmate's rehabilitative needs given the inmate's offense, offense history and that the inmate remains in need of offense related programming." (*Id.*, ¶ 54.) Kupsky thereafter did not let the Property Department know how to dispose of the book. (*Id.*, ¶¶ 57–58.) He could have asked that it be destroyed, donated to a non-profit or to the facility, sent to a person on his approved visiting list, or returned to the sender. (*Id.*, ¶ 55.) The Property Department maintains property until after the inmate complaint (if any) is resolved and the inmate notifies the Department how he would like the publication disposed of. (*Id.*, ¶ 56.) After 30 days passed and Kupsky had not informed the Property Department how to dispose of the book, York filled out the Disposition of Non-Delivered Item(s) on form DOC-243 for Kupsky, and the book was disposed of. (*Id.*, ¶ 59.)

## 2. Summary Judgment Standard

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

8

P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### 3. Analysis

The court allowed Kupsky to proceed on two claims: one under the First Amendment and one under the Fourteenth Amendment.

*3.1 Defendant Moon*

Before examining the substance of Kupsky's claim, the court will address defendant Moon. The undisputed facts establish that Moon was only involved in the underlying incident because she was the Institution Complaint Examiner. Under § 1983, only officials "who cause or participate in the [constitutional] violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (internal citations omitted). Though complaint examiners can be liable if they fail to investigate the alleged harm, *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009), they are not liable for rejecting an inmate's complaint about an official's alleged wrongdoing, *George*, 507 F.3d at 609–610.

The undisputed facts reflect that Moon investigated Kupsky's complaint and reviewed all pertinent documents before sending her recommendation to the warden. (ECF No. 39, ¶¶ 49–51.) She was not involved in denying Kupsky the book, and "she carried out her job exactly as she was supposed to." *Burks*, 555 F.3d at 595. She is entitled to summary judgment, and Kupsky's claims against her are dismissed.

*3.2 First Amendment Claim*

As a prisoner Kupsky "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). And refusing an

10

inmate access to a book does "present[] a substantial First Amendment issue," as "[f]reedom of speech is not merely freedom to speak; it also freedom to read." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005). Even so, prisons still may have "valid penological reasons for limiting prison inmates' access to certain books." *Id.* But a prison must justify its interest in restricting an inmate's access to a certain book, and the restriction "is valid only if it is reasonably related to legitimate penological interests." *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004).

Courts consider four factors when determining a particular restriction's constitutionality: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

The record shows that Bonis decided that Kupsky could not have the book *So I'm a Spider, So What, Volume 4* based on her determination that it was contrary to his rehabilitative needs as an inmate convicted of sexual assault of a child. (ECF No. 39, ¶¶ 37, 41, 44.) Bonis had explained to Kupsky previously that she was restricting him from any materials containing "nudity, depiction[s] of young girls in scantily clad clothing, [or] having subject matter that involves sexual violence or otherwise causing harm to a child." (*Id.*, ¶ 38.) When she received the copy of *So I'm a Spider, So What,*

11

*Volume 4*, she consulted that prior decision about a different publication and with psychologist Dr. Van Buren. (*Id.*, ¶ 42.) She determined that the imagery in the book would "reinforce Kupsky's preoccupation that contributed to his incarceration in the first place." (*Id.*, ¶ 44.)

The record establishes that Bonis's decision to restrict Kupsky from accessing *So I'm a Spider, So What, Volume 4* was rationally related to a legitimate government interest: Kupsky's rehabilitation. The logical connection between the restriction and the asserted goal is apparent. *See Turner*, 482 U.S. at 89–90 (explaining that a regulation cannot be sustained if the connection between it and the proffered foal is "arbitrary or irrational").

The remaining *Turner* factors also reinforce this finding. *See Van der Bosch v. Raemisch*, 658 F.3d 778, 785 n.6 (7th Cir. 2011) (quoting *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). The second factor, whether Kupsky has alternative means to exercise his First Amendment rights, also weighs in favor of the reasonableness of the restriction. The particular right at issue is "substantial" because restricting books can shut an inmate out of the "marketplace of ideas and opinions," which is what Free Speech protects. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005). But Kupsky can receive reading materials that do not contain pornography, depictions of scantily glad women or girls, or subject matter involving sexual violence or causing other harm to a child. (ECF No. 39, ¶ 38.) That leaves plenty of material for Kupsky to read.

12

The third factor, which considers how accommodating the asserted right will impact prison guards, other prisoners, and prison resources generally, also supports the reasonableness of the restriction. As the Seventh Circuit has explained, allowing Kupsky to have the book "could adversely affect the rehabilitation of other sex offenders if they were able to access [it]." *Kemper v. Kemper*, 774 Fed. App'x 307, 309 (7th Cir. 2019). Indeed, Kupsky says in his complaint that he was reading another inmate's copy of *So I'm a Spider, So What, Volume 4* before he ordered his own. (ECF No. 1 at 3.)

The fourth factor asks the court to consider whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. Though Kupsky has suggested that the offending pages could just be removed, the court does not believe he has shown doing so would be easy to implement or efficient. Though he posits that there is no difference between paging through a book and removing pages, common experience says otherwise. Flipping through a book takes far less effort than going page by page and removing any page containing prohibited content. Furthermore, any missed prohibited pages could negatively affect his or other inmates' rehabilitation. Kupsky, therefore, has not identified any viable alternative that would be efficient and not cost the prison its interest in his rehabilitation (or the rehabilitation of other inmates). *See id.*

Kupsky argues that Bonis's decision was based on her opinion, not on facts. But Kupsky is confusing opinion with professional judgment. He cannot create an issue of fact by arguing only that he disagrees with her opinion or professional

13

judgment. Indeed, even drawing all inferences in his favor, the court "must accord deference to the views of prison authorities." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). That is, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To defeat summary judgment, Kupsky must "point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits." *Beard*, 548 U.S. at 530. That is, he must provide evidence that she did not base her decision on her professional judgment. He has not done so.

The undisputed facts establish that Bonis's decision to deny Kupsky access to *So I'm a Spider, So What, Volume 4* was based on the institution's legitimate penological interest of rehabilitating Kupsky. She is entitled to summary judgment.

Defendant York is also entitled to summary judgment. When the court screened the complaint, the court allowed Kupsky to proceed against York because Kupsky alleged York sent him the notice that he would not be allowed to have a copy of *So I'm a Spider, So What, Volume 4*. (ECF No. 8 at 2.) Even assuming that York sending the notice to Kupsky that he would not be allowed to have the book satisfies § 1983's requirement that a defendant be personally involved in an alleged constitutional deprivation, the court has already found that the restriction was reasonably related to a legitimate penological interest.

14

*3.3 Fourteenth Amendment Claim*

The court also allowed Kupsky to proceed on an equal protection claim under the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). A "class of one" claim requires that Kupsky to show he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citations omitted).

Kupsky argues that the book is not prohibited for all inmates and, therefore, it cannot be prohibited for any inmate. He says the institution "cannot treat inmates on a case by case basis." (ECF No. 45 at 3.) Kupsky is mistaken.

All Wisconsin inmates are prohibited from having publications that are contrary to their treatment or rehabilitative goals. (ECF No. 39, ¶ 11 (citing Wis. Admin. Code § DOC 309.04(4)(c)(8)(c).) By their very nature, each inmate's treatment and rehabilitation needs are different and are determined on a case by case basis. For that reason, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted [to prison officials]. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very

15

discretion that such state officials are entrusted to exercise." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 603 (2008).

Kupsky must do more than show that he was treated differently than other inmates; he must show that the different treatment was arbitrary. The court has already determined that the restriction was based on a legitimate penological interest. It was not arbitrary. The defendants are entitled to summary judgment on the Equal Protection claim.

## 4. Conclusion

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 32) is **GRANTED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion

under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 27th day of January, 2021.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge